# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1042

_____

United States of America

*Plaintiff - Appellee*

v.

Cordero Robert Seals

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: December 14, 2018
Filed: February 15, 2019

_____

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

ERICKSON, Circuit Judge.

After purchasing and injecting a substance containing heroin and fentanyl from Cordero Seals, J.V. overdosed and collapsed while pumping gas at the Hawkeye Convenience store in Cedar Rapids, Iowa. Seals was charged with distribution of

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

heroin and fentanyl resulting in serious bodily injury in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C). Seals twice moved for judgment of acquittal–once at the beginning of trial, and again at the close of his case. Both times the district court[2] reserved ruling. The jury convicted Seals on both counts. Seals then renewed his Rule 29 motion in writing which was again denied by the district court. Seals was sentenced to 360 and 240 months concurrently on counts 1 and 2, respectively. Seals appeals asserting that the evidence presented at trial is insufficient to convict him.

## I.    Background

On November 3, 2016, Cordero Seals sold $40 worth of a substance consisting of heroin and fentanyl to J.V. The two men then drove to the Hawkeye Convenience store where surveillance footage captured J.V. entering the restroom with a soda can in his hand. While in the bathroom, J.V. fashioned the can into a heroin spoon, fixed up a syringe, and injected himself. J.V. then returned to his truck to fill his tank with gasoline, where he lost consciousness and collapsed. Approximately 90 seconds later, Seals entered the store from an unknown location, apparently looking for J.V. While inside the store, Seals looked in the direction of the truck and apparently observed J.V. slumped near his vehicle. Seals began to frantically pace for a moment before exiting the building, flagging down another store patron for a ride and fleeing the scene leaving J.V. unattended.

Shortly thereafter a store employee discovered J.V. and called 9-1-1. Officers and paramedics promptly arrived on the scene. The first responders observed several symptoms of an opiate overdose: unconsciousness, shallow breathing, poor skin

---

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

coloration, and pinpoint pupils. The paramedics administered Narcan to revive J.V. and, within 20 to 30 seconds, he regained consciousness. The first responding police officer found a syringe, lighter, and the spoon with residue on J.V.'s person. The Iowa Division of Criminal Investigation Laboratory later identified the residue as a mixture of heroin and fentanyl.

J.V. was transported to Mercy Hospital in Cedar Rapids for observation. While there, his blood was drawn, "about half a teaspoon" of which was sent to the FBI laboratory where it was tested by FBI forensic examiner Roman Karas. The initial screening detected two opiates (morphine and codeine) and a subsequent screening detected two more opiates (fentanyl and acetyl-fentanyl). The arguments in this case center around the acetyl-fentanyl.

Karas testified that morphine is a metabolite of heroin. He further opined that when an individual takes heroin, the heroin molecules are quickly metabolized so that it is not uncommon to find only morphine in a subsequent blood test.[3] Karas also testified that fentanyl has a short half-life–generally detectable only within two to three hours of ingestion. He also stated that the half-life of acetyl-fentanyl had not yet been medically established. Karas further testified that, due to the low volume of blood sampled and his inability to perform additional testing, he was unable to determine precisely which drug caused J.V.'s overdose.

Dr. Joshua Pruitt also testified as an expert, concluding that J.V.'s collapse was a result of an opiate overdose. This testimony was based on his review of the medical charts, law enforcement reports of J.V.'s comatose state and his subsequent Narcan revival. Dr. Pruitt also testified that any opiates in J.V.'s system before he injected himself in the Hawkeye bathroom were likely not the cause of the overdose:

---

[3]Karas also testified that codeine is a common impurity of the heroin preparation process and frequently shows up on a blood sample test for heroin overdose victims.

Well, the primary issue here is an issue of timing. The timing of onset from the time that . . . the substance was used to the onset of his symptoms was very brief. That fits with the clinical picture of . . . an opiate overdose. If there had been other opiates, medications in the background that were . . . there previously, those would not have suddenly become so active that they would have caused that sort of a response. There had to be something that changed; some new drug introduced that caused . . . those symptoms to come on so rapidly.

Finally, Dr. Pruitt confirmed Karas's testimony that it was medically impossible to determine the concentration of the various opiates in J.V.'s blood sample but, based on a total of roughly seven minutes from injection to collapse, the heroin-fentanyl mixture was the most likely cause of the overdose.

## II. Discussion

We review "sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Tillman, 765 F.3d 831, 833 (8th Cir. 2014) (quoting United States v. Harris–Thompson, 751 F.3d 590, 598 (8th Cir. 2014)). "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." United States v. Tate, 633 F.3d 624, 628 (8th Cir. 2011) (quoting United States v. Erdman, 953 F.2d 387, 389 (8th Cir.1992)). "The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict." United States v. Brandon, 521 F.3d 1019, 1025 (8th Cir. 2008) (citing United States v. Hakim, 491 F.3d 843, 845 (8th Cir. 2007)).

21 U.S.C. § 841(b)(1)(C) provides for enhanced penalties "if death or serious bodily injury results from [the use of a controlled substance that has been unlawfully distributed by a defendant]." 21 U.S.C. § 841(b)(1)(C). In Burrage v. United States, the Supreme Court held that, by using the "results from" operator in this statute,

Congress deliberately chose to "use language that imports but-for causality," and that if Congress had wished for 21 U.S.C. § 841(b)(1)(C) to apply to substantial contributing factors, it would have used language denoting that concept. 134 S. Ct. 881 (2014). Therefore, "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless [the drug distributed by the defendant] is a but-for cause of the death or injury." Id. at 892.

Seals argues that, because the acetyl-fentanyl could have been an independent sufficient cause of the overdose, Burrage places a burden on the government to exclude the possibility that it was, in fact, independently sufficient. However, Seals's claim is based on a misapprehension of Burrage. Seals contends that merely because the acetyl-fentanyl alone could have caused the overdose, this possibility must be excluded as a matter of law in order to find that the heroin was a but-for cause. This is derived from the logical principle that the heroin is not a but-for cause of overdose if J.V. might have overdosed in the absence of the heroin. This reading of Burrage is strained and conflicts with our longstanding legal principle that, "[a]lthough the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis." Klein v. United States, 728 F.2d 1074, 1075 (8th Cir. 1984) (citing United States v. Swayne, 700 F.2d 467, 472 (8th Cir. 1983)). See also Tate, 633 F.3d at 628. In this case, the evidence did not indisputably establish that the acetyl-fentanyl was an independently sufficient cause of the overdose; instead it merely showed that the acetyl-fentanyl could have been an independently sufficient cause. The evidence also showed that the heroin-fentanyl mixture could have been either a but-for cause or an independently sufficient cause of J.V.'s overdose. This created a factual issue for the jury to resolve rather than an absolute legal bar to conviction.

Seals points to Gaylord v. United States, 829 F.3d 500 (7th Cir. 2016) for support. We see no inconsistency between the court's decision in Gaylord and the district court's ruling in this case. Here, there was ample evidence that the heroin was either a but-for cause or an independently sufficient cause of the overdose. In Gaylord, that evidence was equivocal. Id. at 507 (concluding the enhancement may have been improperly applied because there was no evidence the oxycodone was the but-for cause of death and without the oxycodone, the cocaine concentration may have been enough to cause the victim's death).

In this case, the evidence in a light most favorable to the verdict established that J.V. purchased a mixture of heroin and fentanyl from Seals, immediately drove to a gas station, injected it in the bathroom, and collapsed within seven minutes. A reasonable jury could find that the tight chain of events strongly suggested on its own that the injected mixture caused the overdose. Along with the other evidence, including Dr. Pruitt's opinion that the seven-minute timeframe is consistent with a heroin overdose, the jury was within its discretion to find but-for causation. This is especially true when Dr. Pruitt stated to a medical certainty that an opiate injected prior to the bathroom injection could not have been a but-for cause of the overdose–"there had to be something that changed." Given that J.V. undisputedly injected the heroin in the bathroom, it was well-within the jury's province to draw the conclusion that the heroin was a but-for cause of the overdose.

Even if the jury *had* determined that the acetyl-fentanyl was an independently sufficient cause of the overdose, Burrage explicitly carved out an exception for cases where there are multiple independently sufficient causes:

> [I]f A stabs B, inflicting a fatal wound; while at the same moment X, acting independently, shoots B in the head . . . also inflicting [a fatal] wound; and B dies from the combined effects of the two wounds, A will generally be liable for homicide even though his conduct was not a

but-for cause of B's death (since B would have died from X's actions in any event).

Burrage, 134 S. Ct. at 890 (first alteration added) (internal quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the jury verdict, there was overwhelming evidence presented to the jury to establish but-for causation. The jury drew reasonable inferences from the evidence that J.V.'s overdose was not caused by any opiate in his system prior to the ingestion of the heroin/fentanyl mixture. The Seventh Circuit's decision in Gaylord is neither controlling nor contradictory to our case law.

## III.   Conclusion

We affirm the judgment of the district court.

_____