# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1053
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Wayne Cooper

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: November 20, 2020
Filed: March 2, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following a jury trial, Michael Cooper was found guilty of distribution of a controlled substance resulting in serious bodily injury and conspiracy to distribute a controlled substance. On appeal, Cooper challenges the sufficiency of the evidence

supporting his convictions; the district court's[1] admission of evidence of his prior drug transactions and a prior overdose resulting from his distribution; and the district court's admission of evidence of his prior felony conviction for aggravated assault. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On August 11, 2018, Darcy Hoff purchased suspected heroin from Cooper at his motel room and gave it to H.K. H.K. injected the substance and became unresponsive within minutes. Paramedics and law enforcement came to the scene after a bystander called 911. They observed drug paraphernalia at the scene, including a syringe. Sioux Falls Police Officer Shawn Nielson applied to H.K. a "sternum rub," a painful stimulus designed to wake someone from unconsciousness, but H.K. did not respond. Law enforcement then administered two doses of Narcan, a medication used to reverse the effects of an opiate overdose. When paramedics arrived, they observed that H.K. was unconscious, off-colored, hypoxic, and had a slow pulse. Paramedic Robert Price assisted H.K.'s breathing for approximately 30-45 seconds by forcing air into H.K.'s lungs with a bag valve mask. Shortly after receiving the two doses of Narcan and breathing assistance, H.K. regained consciousness. H.K. told Price that he had used heroin. H.K. was transported to the hospital, where he again reported that he had used what he believed was heroin. H.K.'s urine sample taken at the hospital tested positive for cocaine.

On August 16, 2018, members of the Sioux Falls Area Drug Task Force executed a search warrant at Cooper's motel room where Hoff had purchased the suspected heroin. Law enforcement found, among other things, two spoons with burn marks and 0.8 grams of a substance containing what later testing revealed to be fentanyl and 4-anilino-N-phenethyl-4-piperidine (ANPP), a compound found in

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

-2-

illegally manufactured fentanyl. Laboratory testing revealed the substance on the spoons also contained fentanyl and ANPP.

Cooper was charged in a superseding indictment with distribution of a controlled substance resulting in serious bodily injury and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. At a pretrial conference, the district court ruled that the government could introduce evidence of: (1) Cooper's prior drug transactions with Hoff and Hoff's knowledge of a prior drug overdose resulting from Cooper's distribution to show motive and intent under Federal Rule of Evidence 404(b) (prior acts evidence), and (2) Cooper's 2012 felony aggravated assault conviction for impeachment purposes under Rule 609. The district court reasoned that the prior acts evidence was more probative than unfairly prejudicial and that it was similar in kind to the crime charged. Additionally, the court determined that Cooper's prior felony conviction was admissible because it had occurred within the past ten years and, if he testified, it would be probative of whether he was being truthful.

After a jury trial ended in a mistrial, a second superseding indictment was filed charging Cooper with distribution of a controlled substance resulting in serious bodily injury (Count 1) and conspiracy to distribute a controlled substance (hydromorphone) (Count 2), both in violation of 21 U.S.C. § 841(a)(1).[2] At a pretrial conference, the district court ruled that the same evidentiary rulings from the first trial would apply in the second trial. The jury in the second trial heard testimony from, among others, Hoff, Price, Officer Nielson, two medical experts, and Cooper. H.K. was unavailable, so his testimony from the first trial was read into the record.

H.K. testified that, at his request, Hoff contacted Cooper, traveled to Cooper's hotel room, and gave Cooper $100 for 2 "clicks" (0.1 grams) of suspected heroin for H.K. and a friend. Hoff then gave H.K. the substance, and H.K. injected it. H.K.

---

[2]The aiding and abetting component was not included in the second superseding indictment.

testified that he thought it was heroin or fentanyl and that based on his prior experience using those substances, it was stronger than anything he had used before.

Hoff similarly testified that on August 11, 2018, she traveled to Cooper's hotel room and gave him $100 for 2 "clicks" of heroin and then gave the substance to H.K., who injected it. She further testified that she and Cooper had a course of drug dealing dating back to 2015. She explained that Cooper eventually became her primary source for Dilaudid, the brand name for the controlled substance hydromorphone. She testified that she resold the Dilaudid to others and that Cooper was aware she was purchasing Dilaudid to distribute to others because she told him she had customers who needed drugs. She further testified that in August 2018, Cooper was her primary source for both Dilaudid and heroin. That month, she purchased heroin from Cooper every day, sometimes three or four times per day. Hoff testified that in 2017 or 2018, she facilitated a heroin deal between Cooper and another individual, A.D. Hoff said she was with A.D. when A.D. overdosed on the heroin that came from Cooper. Hoff testified that she rendered aid and A.D. survived.

Dr. Kenneth Snell, a forensic pathologist and the coroner for Minnehaha and Lincoln Counties, testified as an expert witness on behalf of the government. He opined that H.K. suffered an opiate overdose, based on his review of medical records as well as paramedic and police reports noting H.K.'s initial unresponsiveness and subsequent response to two doses of Narcan. He explained that the effects of an opiate overdose can be reversed by Narcan, and that Narcan *only* reverses the symptoms of an opiate overdose, not an overdose caused by another drug. Dr. Snell further explained that synthetic opioids like fentanyl would not show up on a drug screen administered on H.K. at the hospital he visited. Price similarly opined that H.K. suffered an opiate overdose, based on his observations of H.K., his training and experience, and the paraphernalia found at the scene.

Cooper testified in his own defense. He testified that he supplemented his Veteran's Assistance (VA) income by selling Dilaudid, and he also admitted to

-4-

selling Dilaudid to Hoff ten times per month and to purchasing Dilaudid from Hoff. He denied ever selling Hoff heroin or any other opioid. He further denied selling any drug other than Dilaudid.

Dr. Brad Randall, the sole proprietor of Dakota Forensic Consulting and former coroner for Minnehaha County, testified as an expert witness for Cooper. Dr. Randall opined that he could not determine whether H.K. was at a substantial risk of death (which the government sought to prove in connection with Count 1) because data does not exist demonstrating how often those with shallow breathing ultimately die. He testified that it is impossible to ethically conduct that type of study. He further testified that there was no evidence H.K. suffered a hypoxic injury.

A jury convicted Cooper on both counts, and he was sentenced to two concurrent terms of 240 months imprisonment.

## II.

Cooper challenges the sufficiency of the evidence supporting both of his convictions. "We review 'sufficiency of the evidence de novo, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Seals, 915 F.3d 1203, 1205 (8th Cir. 2019) (emphasis omitted) (citation omitted). "The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict." Id. (citation omitted).

## A.

Cooper argues that the evidence was insufficient to sustain his conviction for distribution of a controlled substance resulting in serious bodily injury. To sustain a conviction under 21 U.S.C. § 841(a)(1) with a serious bodily injury enhancement under § 841(b)(1)(C), the government needed to prove beyond a reasonable doubt that (1) Cooper knowingly or intentionally distributed a controlled substance and

(2) serious bodily injury "result[ed] from" the use of that controlled substance. See United States v. Lewis, 895 F.3d 1004, 1009 (8th Cir. 2018) (citing Burrage v. United States, 571 U.S. 204, 210 (2014)); see also Seals, 915 F.3d at 1205-06. "[A] defendant does 'not need to know the exact nature of the substance in [his] possession, only that it was a controlled substance of some kind.'" United States v. Morales, 813 F.3d 1058, 1065 (8th Cir. 2016) (citation omitted). By using the phrase "results from" in the statute, Congress set forth a "but-for" causation standard. See Burrage, 571 U.S. at 214, 218-19.

Cooper argues that the evidence is insufficient to sustain his conviction on this count because the government had no physical evidence of the nature of the substance H.K. ingested; the government failed to prove that H.K.'s overdose involved a substantial risk of death; and the government's case "rested largely on the testimony of Darcy Hoff," who admitted lying during her testimony and had "highly suspicious" motives. Appellant's Br. 20.

The government proffered sufficient evidence that Cooper knowingly distributed a controlled substance. H.K. testified that, at H.K.'s request, Hoff contacted Cooper, traveled to Cooper's hotel room, and gave Cooper money in exchange for suspected heroin. Hoff then gave H.K. the substance, and H.K. injected it. H.K. testified that he thought it was heroin or fentanyl, and that based on his prior experience using those substances, it was stronger than anything he had used before. Hoff testified similarly that she gave Cooper $100 for 2 "clicks" of heroin and then gave the substance to H.K., who injected it. Hoff also testified that she had purchased heroin from Cooper on numerous prior occasions. Law enforcement also found burnt spoons as well as a substance containing fentanyl and ANPP in Cooper's hotel room where Hoff said she purchased the substance H.K. injected. Based on this evidence, a reasonable jury could conclude that Cooper knowingly distributed a controlled substance. See United States v. Ramos, 852 F.3d 747, 751, 753-54 (8th Cir. 2017) (finding testimony that defendant sold methamphetamine out of his apartment to confidential informant on three occasions was sufficient to sustain convictions for distribution and possession); United States v. Lee, 687 F.3d 935, 942

(8th Cir. 2012) (finding evidence sufficient to sustain convictions on five distribution counts where buyers testified that defendant was present and participated in cocaine sales).

Additionally, the government presented sufficient evidence from which a reasonable jury could conclude that H.K. suffered serious bodily injury based on his use of the substance Cooper had distributed. "[S]erious bodily injury" is "bodily injury" involving "a substantial risk of death"; "protracted and obvious disfigurement"; or "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 21 U.S.C. § 802(25)(A)-(C). We have previously sustained convictions for this offense where the victim survived an overdose from the use of a controlled substance. See, e.g., Seals, 915 F.3d at 1204, 1207 (sustaining conviction where victim became unconscious and had shallow breathing and poor skin coloration after injecting controlled substance); Lewis, 895 F.3d at 1005-07 (sustaining conviction where victims became unresponsive after injecting controlled substance and experts testified that victims faced risk of death without medical intervention). Based on the paramedic's testimony that H.K. was unconscious, off-colored, hypoxic, and had a slow pulse; Officer Nielson's testimony that H.K. failed to respond to a "sternum rub"; and the fact that H.K. exhibited each symptom of an opiate overdose outlined in Dr. Snell's testimony, a reasonable jury could have concluded that H.K. faced a substantial risk of death, and thereby sustained serious bodily injury, from the use of the substance Cooper had distributed. Cooper's expert's testimony that there was no evidence that H.K. suffered a hypoxic injury does not render unreasonable the jury's conclusion that H.K. faced a substantial risk of death. "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (citation omitted).

Additionally, there was sufficient evidence that Cooper's distribution was the "but-for" cause of H.K.'s overdose. We previously analyzed and found but-for causation in Seals, where, after purchasing suspected heroin and fentanyl, the victim injected himself, lost consciousness, and collapsed. 915 F.3d at 1204, 1207. The

government's expert opined that the victim's collapse was a result of an opiate overdose "based on his review of the medical charts, law enforcement reports of [the victim's] comatose state and [the victim's] subsequent Narcan revival." Id. at 1205. The expert opined that, based on the roughly seven minutes from the victim's injection to collapse, the substance mixture "was the most likely cause of the [victim's] overdose." Id. We upheld the distribution conviction and serious bodily injury enhancement, explaining that "[a] reasonable jury could find that the tight chain of events strongly suggested on its own that the injected mixture caused the overdose." Id. at 1206.

Here, the facts are closely analogous. Viewed in the light most favorable to the verdict, the evidence showed that H.K., through Hoff, obtained suspected heroin from Cooper; injected it; and within minutes became unresponsive. First responders and bystanders observed symptoms consistent with an opiate overdose. H.K. regained consciousness in under one minute after receiving two doses of Narcan and breathing assistance. Dr. Snell and Price testified that H.K.'s condition was consistent with an opiate overdose. A reasonable jury could have found that this evidence established but-for causation. See id.

Finally, we reject Cooper's challenge to Hoff's credibility and the weight of her testimony. "[I]n reviewing the sufficiency of the evidence, '[i]t is axiomatic that we do not pass upon the credibility of witnesses or the weight to be given their testimony.'" United States v. Moua, 895 F.3d 556, 559 (8th Cir. 2018) (per curiam) (second alteration in original) (citation omitted). Credibility determinations are "uniquely" within the province of the jury. Id. (citation omitted). Moreover, although her testimony went towards several elements of the crime, there was ample evidence against Cooper from other witnesses, including Dr. Snell, Price, and H.K. Accordingly, we find the evidence sufficient to sustain Cooper's conviction on Count 1.

B.

Although Cooper states in his brief that he challenges the sufficiency of the evidence for both of his convictions, he did not squarely address his conviction for conspiracy to distribute a controlled substance. Ordinarily, a party's failure to make an argument in its opening brief results in waiver of that argument. See Montin v. Moore, 846 F.3d 289, 295 (8th Cir. 2017) ("Because '[c]laims not raised in an opening brief are deemed waived,' and [appellant] failed to address the . . . claim in his opening brief, [appellant] waived this issue." (first alteration in original) (citation omitted)). However, because the government addressed Count 2 in its brief and did not raise a waiver argument, we will consider Count 2 on the merits.

We find that there was sufficient evidence to sustain Cooper's conspiracy conviction. For the jury to convict Cooper on the conspiracy count, the government needed to prove that (1) there was an agreement to distribute drugs; (2) Cooper knew of the agreement; and (3) Cooper intentionally joined in the agreement. Lewis, 895 F.3d at 1009. "An agreement to join a conspiracy need not be explicit and can be inferred from the facts of the case." Id. (citation omitted). The government presented evidence, including Cooper's own testimony, establishing that Cooper engaged in a conspiracy to distribute hydromorphone, also known by the brand name Dilaudid. Cooper testified that he supplemented his VA income by selling Dilaudid, and he also admitted to selling Dilaudid to Hoff ten times per month and to purchasing Dilaudid from Hoff. Hoff likewise testified that she bought Dilaudid from Cooper every month, including the month of H.K.'s overdose. She also testified that she resold the Dilaudid to others and that Cooper was aware she was purchasing Dilaudid for resale because she told him she had customers who needed drugs. Based on Hoff's and Cooper's testimony, the jury had sufficient evidence to conclude that Cooper conspired with Hoff to distribute Dilaudid (hydromorphone). See id. (finding co-conspirator's testimony that "he had been receiving heroin from [defendant] for approximately two months," that he paid defendant $200 for a "previously fronted drug transaction," and that defendant distributed heroin to him on a particular day sufficient to sustain defendant's conspiracy conviction).

III.

A.

Cooper next contends that the district court erred in admitting "prior acts" evidence under Federal Rule of Evidence 404(b). "We review the district court's admission of evidence of [prior acts] under Federal Rule of Evidence 404(b) for abuse of discretion, and we will not reverse unless the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Geddes, 844 F.3d 983, 989 (8th Cir. 2017) (citation omitted).

Evidence of prior acts is admissible under Federal Rule of Evidence 404(b) if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Id. at 989-90 (citation omitted); see Fed. R. Evid. 404(b).

Cooper contends that none of the four elements was met, and thus the district court abused its discretion in allowing evidence of his prior drug transactions and Hoff's knowledge of a prior drug overdose resulting from his distribution. As to the prior drug transactions, we disagree. Because Cooper pled not guilty, his intent was at issue; thus, evidence of his prior drug transactions was relevant to his intent for both the distribution and conspiracy charges. See United States v. Hill, 638 F.3d 589, 592 (8th Cir. 2011) (holding that prior acts of cocaine distribution were admissible in drug distribution case because knowledge of or intent to distribute drugs are material issues in such cases); United States v. Brown, 956 F.2d 782, 787 (8th Cir. 1992) ("Evidence of other drug transactions is relevant to demonstrate that the defendant knowingly and intentionally participated in a conspiracy and was not merely an unwitting or uninvolved bystander."). Additionally, the prior acts were similar in kind and not overly remote in time to the crimes charged: Hoff testified that she frequently bought both heroin and Dilaudid from Cooper, including the

-10-

month of H.K.'s overdose. Finally, the potential prejudice did not substantially outweigh the probative value of Hoff's testimony. Accordingly, we find no abuse of discretion in the district court's admission of evidence of Cooper's prior drug transactions.

We reach a different conclusion as to the evidence of the prior overdose, but ultimately we find that the error was harmless. It was error to admit evidence of Hoff's knowledge of the prior overdose because it was not relevant to *Cooper's* motive or intent to commit the distribution or conspiracy offenses. Moreover, to convict Cooper of distribution and trigger the serious bodily injury enhancement, the statute requires that Cooper knowingly distributed a controlled substance, but it imposes no state of mind requirement as to the resulting bodily injury. See 21 U.S.C. § 841(a)(1), (b)(1)(C). Accordingly, Cooper need not have intended for his distribution to cause bodily injury or even have been recklessly or negligently indifferent to it; it was enough for bodily injury to "result[] from" his distribution. See id. § 841(b)(1)(C). Moreover, we do not see—and the district court did not explain—how evidence of the prior *overdose* bore on Cooper's motive or intent to engage in a conspiracy to distribute a controlled substance. However, given the ample other evidence against him, we conclude that the error in admitting this evidence was harmless. See United States v. Harry, 930 F.3d 1000, 1007 (8th Cir. 2019) ("Considering the strength of the government's case, the district court's alleged evidentiary error [in admitting evidence of defendant's prior acts] would have been harmless.").

B.

Finally, Cooper asserts that the district court erred in admitting his prior felony aggravated assault conviction under Federal Rule of Evidence 609. "When considering whether evidence concerning [Cooper's] prior conviction was properly admitted for impeachment purposes, we apply an abuse of discretion standard of review." United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008).

Under Rule 609(a)(1)(B), a crime punishable by more than one year in prison "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). Here, Cooper's credibility was at issue: the jury heard testimony from Hoff, H.K., and another witness implicating Cooper in drug distribution, while Cooper denied his involvement.

We agree with the district court that the prior felony conviction was probative as to Cooper's credibility as a witness. The district court conducted the appropriate balancing and concluded that the probative value outweighed its prejudicial effect. We find no error in the district court's analysis. Accordingly, we find no abuse of discretion in the district court's admission of the evidence of Cooper's prior felony conviction. See Collier, 527 F.3d at 700 (where jury had to consider contradictory testimony on contested element of charge against defendant, "permitting evidence relevant to [defendant's] credibility regarding a felony that is not highly prejudicial[] was reasonable and not an abuse of discretion").

IV.

For the foregoing reasons, we affirm the district court's judgment.

_____