# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-1421

_____

United States of America

*Plaintiff - Appellee*

v.

Maurice Bellafonta Cathey

*Defendant - Appellant*

_____

No. 20-1519

_____

United States of America

*Plaintiff - Appellee*

v.

Corrod Leon Phillips

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: December 15, 2020
Filed: May 18, 2021

_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Corrod Phillips and Maurice Cathey were arrested for conspiring to distribute drugs in South Dakota. In joint proceedings, they were tried and convicted of two counts of conspiring to distribute a controlled substance in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and one count of distribution resulting in serious bodily injury in violation of 21 U.S.C. § 841(a)(1). The jury also found Phillips guilty of one additional count of distribution resulting in serious injury and Cathey guilty of two additional counts of distribution resulting in serious injury or death. Phillips appeals his conviction solely on the distribution resulting in serious injury counts. Cathey appeals his conviction on all counts. Both argue that the district court[1] erroneously denied their motions for acquittal based on insufficiency of the evidence. We affirm.

I.

In January 2018, a confidential informant contacted Maurice Cathey on his Chicago-area cell phone number to set up a controlled buy. The same day, Shania Hofer also bought heroin from Cathey. Hofer returned to her friend Layne Diaz's home and they both used the heroin, resulting in Diaz's overdose. Hofer then called the CI over, who saw that Diaz was unresponsive but alive. Hofer eventually called EMTs for Diaz, but he was pronounced dead at the hospital. An autopsy revealed that he died of heroin toxicity.

After a month, Hofer was buying heroin from Cathey daily, calling him at the same Chicago-area cell phone number. One day, Hofer overdosed within minutes

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

of taking heroin that Cathey sold her. She was treated with Narcan and taken to the hospital.

A few days later, police showed Hofer a photo lineup including Cathey and asked her to identify who sold her the heroin. At first, Hofer told police she did not recognize anyone in the lineup, but later that day she admitted that she recognized Cathey. Cathey remained at large, and Hofer continued to purchase heroin from him. She also began selling that heroin to her own customers, including Ty Olson.

Olson contacted Hofer to buy heroin one day in April, and Hofer in turn called Cathey to purchase heroin she could resell. Cathey's associate, Corrod Phillips, delivered the heroin to Hofer, and she sold it to Olson. Olson overdosed on the heroin a short time later but was revived with Narcan and taken to the hospital.

By late April, police had gathered substantial evidence tying Cathey to drug distribution. Police then searched a home associated with him, but Cathey managed to flee to Chicago. Phillips remained in Sioux Falls, though, and continued distributing drugs on Cathey's behalf. Hofer also continued selling Cathey's heroin in Sioux Falls, even travelling to Chicago twice to purchase more drugs from him. She told her buyers to contact Phillips if they wanted drugs while she was gone.

In line with Hofer's instructions, Devlin Tommeraasen bought heroin from Phillips in May and overdosed. EMTs revived him with Narcan and took him to the hospital.

Police ultimately arrested Phillips during a heroin and crack cocaine sale in May. A search revealed that Phillips had Cathey's Chicago-area cell phone with him. Cathey was also eventually apprehended, and both Cathey and Phillips were indicted for several drug distribution and conspiracy charges.

At trial, the Government called Hofer's friend Nicole Hollaar to testify. At first, Hollaar testified that she did not know Cathey. But the Government knew from

text messages on Cathey's cell phone that Hollaar had bought heroin from him. Counsel for the Government and Jorge Carrasco, a case agent who would later testify at trial, then interviewed Hollaar, and she admitted that she lied on the stand. The Government notified defense counsel that Hollaar would be recalled and offered immunity in exchange for correcting her false testimony. Hollaar corrected her testimony and testified that Hofer told her that Cathey was the source of Hofer's drugs. Defense counsel objected, saying the Government violated the district court's witness sequestration order because Agent Carrasco was also a testifying witness. The court overruled the objection and allowed Hollaar to testify that she contacted Cathey multiple times to buy heroin to sell to her own customers.

Both men were found guilty and filed motions for judgments of acquittal, which the district court denied. At sentencing, the Government introduced copies of Cathey's prior felony convictions to support a sentencing enhancement under 21 U.S.C. § 851. Cathey objected, saying there were no photographs or fingerprints attached to the documents to prove that he was the person listed in the convictions. The district court overruled Cathey's objection and found that the Government proved that he had been previously convicted. Cathey was given two 30-year sentences and three life sentences, all to run concurrently. Phillips was given four concurrent 20-year sentences. Cathey and Phillips now appeal.

II.

We address Phillips's argument first. He says the Government did not prove beyond a reasonable doubt that the drugs he distributed to Olson and Tommeraasen "were the sole cause of [their] serious bodily injur[ies]." Phillips Br. 8.

We review challenges against the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and accepting all reasonable inferences that support the verdict. *United States v. Seals*, 915 F.3d 1203, 1205 (8th Cir. 2019). When a defendant challenges the sufficiency of the evidence, the "verdict will be upheld if there is any interpretation of the evidence that could lead

-4-

a reasonable jury to convict." *Id.* (citation omitted). To sustain the guilty verdict, the Government must have proved that (1) the defendant knowingly or intentionally distributed a drug; and (2) the victim died or sustained a serious bodily injury caused by the use of the drug. *United States v. Lewis*, 895 F.3d 1004, 1009 (8th Cir. 2018) (citation omitted). Phillips contests only the second element: that the drug be either the "but-for" cause or an "independently sufficient" cause of the injury. *Burrage v. United States*, 571 U.S. 204, 218–19 (2014).

Phillips says there was insufficient evidence of his guilt with respect to Olson's injury because even "if the opiate [overdose] is reversed by Narcan it does not mean the opiate was the only reason for the overdose." Phillips Br. 12. Phillips argues that Olson's overdose was the result of a combination of several drugs all interacting, and so the opiate could not have been a but-for cause of injury. Phillips makes a similar argument about Tommeraasen's overdose. He supports this latter argument by pointing to the defense expert's testimony that the expert could not conclude that Phillips's heroin alone caused Tommeraasen's overdose. Phillips says that a reasonable jury could not believe that but for his heroin, the two victims would not have overdosed.

Phillips's argument misunderstands what but-for cause requires. We said in *Seals* that when the victim purchased a drug mixture, ingested it, and collapsed within seven minutes, a "reasonable jury could find that the tight chain of events strongly suggested on its own that the [drug] mixture caused the overdose." *Seals*, 915 F.3d at 1206. We also recently considered facts that are on all fours with this case in *United States v. Myers*: different drugs were present in the victim's body, but the fatal overdose did not occur until the victim took heroin. 965 F.3d 933, 938 (8th Cir. 2020). We concluded in *Myers* that when a medical expert testifies that a victim "would be alive" were it not for the drugs the defendant sold to the victim, a "reasonable jury could conclude" that the drugs "caused his death." *Id.* at 938–39.

Bearing in mind the standard these cases establish, we turn to Olson's overdose. The record shows that Olson had benzodiazepines in his system when he

-5-

arrived at the hospital. Benzodiazepines are a different kind of drug than heroin, and Phillips points to them as a possible alternative source of Olson's overdose. But Olson was revived by Narcan. Expert testimony at trial established that Narcan reverses only the effects of opiates like heroin. So, although Olson had benzodiazepines in his system when he overdosed, there is no evidence suggesting that the benzodiazepines *alone* would have rendered Olson unconscious and not breathing. That is, if the benzodiazepines were what caused Olson to stop breathing, the expert testimony indicates that Olson would not have started breathing again after receiving Narcan. Finally, additional expert testimony suggested that if Olson was suffering from benzodiazepine overdose, he would have had dilated pupils, but he instead had pinpoint pupils at the scene of the overdose. We have previously noted that "pinpoint pupils" are a "symptom[] of an opiate overdose." *Seals*, 915 F.3d at 1204. The evidence presented at trial was enough to establish that the heroin Phillips gave to Olson via Hofer was a but-for cause of injury under *Seals* and *Myers*.

With respect to Tommeraasen's overdose, Tommeraasen testified that he used methamphetamine at 8:00 p.m. on May 15, purchased heroin from Phillips the following day, and then used the heroin that afternoon. Although Tommeraasen was still feeling some lingering effects of the methamphetamine he took the prior night,[2] the record shows that he fell unconscious within seconds of injecting himself with a "fat shot" of heroin on May 16. Trial Tr. 963. These facts fit squarely with those that we confronted in *Seals* and determined were enough to sustain the defendant's conviction there. We likewise sustain Phillips's convictions.

## III.

Cathey's argument is four-fold. He argues that (1) the Government did not prove beyond a reasonable doubt that he was guilty on any of his counts of conviction; (2) the district court erred when it admitted hearsay statements of

---

[2]Tommeraasen testified that he felt "a little bit" high but did not feel "the full effects" of the methamphetamine he used the previous night. Trial Tr. 1067.

someone it improperly found was a co-conspirator; (3) the district court erred in failing to take remedial steps after the Government violated the witness sequestration order; and (4) the evidence of Cathey's prior felony convictions was insufficient.

A.

Cathey's "verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict." *Seals*, 915 F.3d at 1205 (citation omitted). To prove distribution causing serious injury or death under 21 U.S.C. § 841(a)(1), the Government must show that (1) the defendant knowingly or intentionally distributed drugs; and (2) the victim died or sustained a serious bodily injury caused by using the drugs. *Lewis*, 895 F.3d at 1009. As with Phillips, only the second element is at issue here. Either "but-for" cause or "independently sufficient" cause is enough to sustain the conviction. *Burrage*, 571 U.S. at 218–19.

To convict Cathey of the conspiracy charges under 21 U.S.C. § 846, the Government had to prove that (1) two or more persons agreed to distribute a controlled substance; (2) Cathey knew the agreement's purpose; and (3) Cathey knowingly and voluntarily joined it. *See United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018). "No explicit agreement is required; a tacit or implicit understanding is sufficient." *Id.* (citation omitted). To convict Cathey of the underlying drug distribution charge under 21 U.S.C. § 841(a)(1), the Government had to prove that Cathey knowingly and intentionally distributed a controlled substance. *See United States v. Nichols*, 808 F.2d 660, 663 (8th Cir. 1987).

Cathey's first argument is that the evidence proffered to meet the elements of each offense listed above was insufficient for one reason: the evidence "consisted of the testimony of cooperating witnesses which was incredible and insubstantial on its face." Cathey Br. 12. Cathey's argument consists of a cornucopia of reasons why the witnesses the Government put on against him were untrustworthy.

Cathey overlooks the fact that the "jury's credibility determinations are virtually unreviewable on appeal." *United States v. Shumaker*, 866 F.3d 956, 960 (8th Cir. 2017) (citation omitted). Plus, a "jury verdict may be based solely on the testimony of cooperating witnesses." *King*, 898 F.3d at 808 (citation omitted). Even "conflicting evidence offered at trial affords no basis for reversal" without more. *United States v. Reddest*, 512 F.3d 1067, 1071 (8th Cir. 2008).

Cathey's alternative argument relies on *Burrage* to say that even if the drugs he distributed contributed to injury and death, they were not a but-for cause of that injury and death. But, like Phillips, Cathey misunderstands the meaning of but-for cause. The drugs Cathey distributed did not need to be the *sole* cause of injury or death; the drugs needed only to be one link in the chain of events necessary for the injury or death to occur. *See Myers*, 965 F.3d at 938–39. Cathey's heroin was a necessary link in every injury and death in his case. Cathey's suggestion that we should squint hard enough to obscure that fact is essentially a request that we reweigh the evidence in his favor. But that is not our role. *United States v. Piwowar*, 492 F.3d 953, 956 (8th Cir. 2007) ("[W]e have no right to usurp the jury's role to judge the facts and make credibility findings.") (citation omitted).

Cathey's challenge to the sufficiency of the evidence lacks supporting authority. Viewing the evidence in the light most favorable to the verdict, the evidence of Cathey's guilt was sufficient.

### B.

Cathey also takes issue with the district court's admission of out-of-court statements made by Hofer to her friend, Nicole Hollaar. We review the district court's decision to admit out-of-court statements made in furtherance of a conspiracy "for an abuse of discretion, keeping in mind that its discretion is particularly broad in a conspiracy trial." *Myers*, 965 F.3d at 939 (citation omitted).

An out-of-court statement is not hearsay if it is offered against the defendant in a conspiracy case and it is a statement that the defendant's co-conspirator made during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). To admit such statements, the Government must "demonstrate by a preponderance of the evidence" that (1) "a conspiracy existed"; (2) "the defendant and the declarant were members of the conspiracy"; and (3) "the declaration was made during the course and in furtherance of the conspiracy." *United States v. King*, 351 F.3d 859, 865 (8th Cir. 2003) (citation omitted).

Cathey argues that (1) he was not a member of a conspiracy; (2) Hofer and Hollaar were not members of the same conspiracy with him if one existed; and (3) a buyer/seller relationship does not suffice to prove a conspiracy. Based on these three contentions, Cathey says the district court abused its discretion. Section III.A of this opinion explains why Cathey's argument against his membership in the conspiracy fails, so we move on to the remaining two.

As to Cathey's second contention, we note that Hollaar—the witness on the stand—did not need to be in the conspiracy with Cathey for the statement against Cathey to be admitted because she was not the statement's declarant.[3] *Hofer* was the declarant when she told Hollaar that Cathey was her drug source. Statements about a co-conspirator's source of drugs satisfy the "in furtherance" requirement. *United States v. Arias*, 252 F.3d 973, 977 (8th Cir. 2001). The record reveals that Hofer was a co-conspirator at the point when Cathey started fronting her heroin daily and Hofer in turn resold that heroin to others until she had enough money to buy heroin from Cathey for her own use. Hofer had already testified to that effect before Hollaar took the stand, which laid the necessary foundation for finding that Hofer and Cathey were members of the same conspiracy.

---

[3]We also note that the record establishes that Hollaar was a member of the conspiracy in any case. *See* Trial Tr. 800–09.

With respect to Cathey's final contention, the connection between Hofer and Cathey was no longer a mere buyer/seller relationship at the time that Hofer made the statement to Hollaar. When Hofer told Hollaar that Cathey was the source of Hofer's drugs, Hofer—the declarant—was a co-conspirator in a drug distribution scheme with Cathey—the defendant—in which she was reselling Cathey's heroin to her own buyers. That is enough to pass muster under *King* and *Arias*. The district court did not abuse its discretion by admitting Hofer's statements to Hollaar.

C.

Cathey next challenges the district court's decision to let Hollaar correct her prior testimony after she was confronted by the Government's counsel and the case agent—another testifying witness. The district court determined that the Government's contact with Hollaar was "not improper," but the court nonetheless decided the correct remedy to any possible violation of its sequestration order was to "limit[] Hollaar's further testimony to correcting her prior false statements." D. Ct. Dkt. 140 at 6.

We review the district court's ruling that the government did not breach the sequestration order for "abuse of discretion, granting wide latitude to the court and requiring the moving party to show prejudice." *United States v. Engelmann*, 720 F.3d 1005, 1012 (8th Cir. 2013) (citation omitted). If a court determines that its sequestration order was violated, it still has "wide latitude in deciding how to respond to the impropriety." *United States v. Calderin-Rodriguez*, 244 F.3d 977, 985 (8th Cir. 2001).

Cathey's argument is that the district court's decision not to exclude Hollaar's later testimony was prejudicial. But the proper showing of prejudice is elusive on this record. Hollaar's corrected testimony was obviously prejudicial to Cathey because it provided further evidence of his guilt, but that prejudice did not arise from

the Government's tampering with or coaching a witness.[4]  Even assuming without deciding that a violation took place, it would have been harmless "in view of the mountain of damaging evidence against" Cathey.  *Id.*  Plus, Hollaar was called back to testify in order to allow the Government to correct prior testimony it knew to be false—which it was required to do under *United States v. White*.  724 F.2d 714, 717 (8th Cir. 1984).  The court limited Hollaar's testimony to that purpose and Cathey "had an opportunity to fully cross-examine Hollaar" when she took the stand again. D. Ct. Dkt. 140 at 5–6.

Cathey cites no legal authority for his argument that the district court abused its discretion when it chose these responses to any supposed violation of the sequestration order.  The sole distinguishing fact Cathey points to—Hollaar's receipt of immunity in return for correcting her testimony—is a distinction from *Calderin-Rodriguez* without a difference.  The district court did not abuse its discretion.

D.

Finally, we consider Cathey's argument that the records of his convictions introduced at sentencing were unreliable.  We review the district court's determination that the Government proved that Cathey had prior felony convictions for clear error.  *United States v. Pratt*, 553 F.3d 1165, 1169 (8th Cir. 2009).  We

---

[4]We have previously said that prejudice can be established by showing "that the contact resulted in the tailoring of witness testimony to that of earlier witnesses or the development of less than candid testimony which Rule 615 seeks to prevent." *United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991).  But neither happened in this case.  Hollaar corrected her false statements in order to develop *more* candid testimony and thereby permit the Government to comply with its obligations.  And the Government witness who was at Hollaar's post-testimony interview, Agent Jorge Carrasco, was the case agent who later offered testimony on the details of the investigation and general patterns of drug use and distribution.  Trial Tr. 1332–78. Because those are "completely different issues that did not overlap" with Hollaar's corrected testimony that she personally knew and bought heroin from Cathey, we conclude there was no prejudice of the sort our caselaw prohibits.  *United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003).

grant the district court "wide discretion at sentencing as to the kind of information considered or its source." *Id.* at 1170 (citation omitted).

At Cathey's sentencing hearing, a United States Probation Officer testified that Cathey's prior convictions were connected to him through his fingerprints by the National Crime Information Center. Cathey says the certified copies of criminal convictions that were introduced, standing alone, were insufficient to meet the Government's burden because in prior cases we have required such documents to be accompanied by "other identifying information." Cathey Br. 23 (citing *United States v. Sanchez-Garcia*, 461 F.3d 939, 948 (8th Cir. 2006)). Without additional evidence like photos, Cathey says, the district court's finding that the Government met its burden was clearly erroneous.

We disagree. We have said before that any evidence with "sufficient indicia of reliability to support the conclusion that it is probably accurate" can be considered by the district court at sentencing. *Sanchez-Garcia*, 461 F.3d at 948 (citation omitted). We also noted in *United States v. Urbina-Mejia* that the NCIC fingerprint database is reliable enough and the documents it produces can be sufficient evidence of prior convictions, even standing alone. 450 F.3d 838, 840 (8th Cir. 2006). Like Cathey, Urbina-Mejia mounted a challenge against the way the Government proved his prior criminal history at sentencing. He argued that because the Government offered only certified convictions obtained via the NCIC and never inspected the fingerprints used in the NCIC, the district court's reliance on the NCIC report was clearly erroneous. *Id.* We rejected that argument, explaining that "while [the appellant] is entitled to put the government to its burden, he provide[d] no evidence that the NCIC [fingerprint] report is unreliable" and so we concluded that "[g]iven the testimony and evidence . . . the district court did not clearly err." *Id.*

In the absence of evidence undermining their reliability, the officer's testimony and the records of Cathey's convictions obtained through the NCIC were enough for the Government to carry its burden. The district court did not clearly err.

## IV.

The judgment of the district court is affirmed.

_____