# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1260
_____

United States of America

*Plaintiff - Appellee*

v.

Darrell Alan Lussier

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 21, 2016
Filed: January 6, 2017

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Following a jury trial, Darrell Alan Lussier was convicted of three counts of kidnapping, in violation of 18 U.S.C. §§ 1151, 1153(a), and 1201(a)(2), and three counts of assault resulting in serious bodily injury, in violation of

18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). The district court[1] sentenced Lussier to 360 months' imprisonment. Lussier appeals, arguing that the district court erroneously instructed the jury regarding assault resulting in serious bodily injury, that the court erred by conditionally admitting a prior assault conviction as impeachment evidence, and that the evidence was insufficient to convict him of kidnapping. We affirm.

I.

Because Lussier challenges the sufficiency of the evidence, "we will examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences." United States v. Bordeaux, 84 F.3d 1544, 1547 (8th Cir. 1996). In February 2015, Gregory Lee Maxwell resided in a duplex house in the Back of Town area of the Red Lake Indian Reservation. Maxwell was prohibited from having drugs in the house. Lussier and his then-girlfriend Cristy Sumner resided with Maxwell for approximately one month. Maxwell believed that he was on good terms with Lussier and Sumner, who had "pretty much left on their own," but according to Maxwell, Lussier and Sumner had brought drugs into the house, despite knowing that drugs were not allowed on the premises.

On or about February 7, 2015, David Roy and Maxwell were drinking alcohol together at Maxwell's house. When Maxwell left to buy more alcohol, he instructed Roy not to let Lussier and Sumner into the house. When Maxwell returned home a few hours later, David Roy, his sister Nancy Roy, Lussier, and Sumner were present at his house. Lussier proceeded to beat Maxwell, David Roy, and Nancy Roy. According to Maxwell, Lussier hit him, jumped on his stomach and side, wrapped a bootlace around his throat, and dragged him by the bootlace, choking him. When

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Maxwell tried to leave, Sumner blocked the door, and Lussier told him: "Tonight is the night. Tonight is the night. You gonna die tonight. You got one hour to live." David Roy and Nancy Roy were also badly beaten by Lussier. Lussier and Sumner threw Maxwell, David Roy, and Nancy Roy through a trap door into the crawl space underneath the house. They then shut the trap door to the crawl space, which was cold and poorly lit. Maxwell and Nancy Roy attempted to find the trap door and push it open but were unable to do so. The three remained in the crawl space until Maxwell's nephew, Lawrence Kingbird, discovered them on the morning of February 9, 2015.

Maxwell, David Roy, and Nancy Roy all eventually received medical treatment. Maxwell suffered a hemopneumothorax, blood and air in the chest cavity that placed pressure on the heart and lungs and required the placement of a chest tube; several rib fractures, which likely caused the hemopneumothorax; spinous process fractures; a dissection of his carotid artery, which caused him to suffer a stroke; a deep cut on his chin that required sutures; and a traumatic brain injury. Maxwell was hospitalized for approximately ten days and spent ten more days in rehabilitation. Nancy Roy suffered a subdural hematoma and multiple facial bone fractures, which required surgery. She was hospitalized for approximately ten days. David Roy suffered hemorrhaging in his brain and facial fractures. He spent more than one month in the hospital and approximately one month in a psychiatric facility.

II.

A.

Lussier first argues that the district court erred in instructing the jury on assault resulting in serious bodily injury. Because Lussier did not object to these instructions, we review for plain error. United States v. Davis, 237 F.3d 942, 944 (8th Cir. 2001). "[A] conviction will be affirmed 'if the instructions, taken as a

whole, fairly and adequately convey the law applicable to the case.'" United States v. Whitefeather, 275 F.3d 741, 743 (8th Cir. 2002) (quoting United States v. McDougal, 137 F.3d 547, 558 (8th Cir. 1998)).

Lussier contends that the jury instruction did not require the jury to find that Lussier committed an assault that resulted in serious bodily injury, as the statute requires. See 18 U.S.C. § 113(a)(6). The district court instructed the jury that the offense has two elements: that the defendant committed an assault, and that the person assaulted suffered serious bodily injury. The court defined assault as "an intentional and voluntary attempt or threat to do injury to another person, when coupled with the present ability to do so that is sufficient to put the other person in fear of immediate bodily injury." Lussier argues that because the instruction defined assault only as a threat or attempt to injure another, it did not require that the assault actually caused the serious bodily injury. He acknowledges that we have previously upheld convictions for assault under § 113 when the offense conduct involved a harmful or offensive touching. See Whitefeather, 275 F.3d at 742-43; Davis, 237 F.3d at 944-45. But he argues that in those cases there was a legal basis for the assault conviction because the jury instructions defined assault to include an actual harmful or offensive touching, whereas here the instructions defined assault to include only the threat or attempt to injure another.

The jury was required to find that Lussier committed an assault and that the person assaulted suffered serious bodily injury. When these instructions are read together, the most natural meaning is that Lussier's assault caused the serious bodily injury and thus that the assault involved harmful touching. Accordingly, the instructions "taken as a whole, fairly and adequately convey[ed] the law applicable to the case," Whitefeather, 275 F.3d at 743, and thus the jury had a sufficient legal and factual basis to convict Lussier of that charge.

Moreover, even if the assault instruction was erroneous, it was not plain error because it did not affect Lussier's substantial rights. See United States v. Vanover, 630 F.3d 1108, 1119 (8th Cir. 2011) (per curiam). "[A]n error only affects substantial rights if it is prejudicial, *i.e.*, the defendant proves there is 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" Id. (second alteration in original) (quoting United States v. Dominguez-Benitez, 542 U.S. 74, 82 (2004)). The evidence presented at trial showed that Lussier physically beat the victims, not that he attempted or threatened to beat them. Had the jury instructions defined assault to include physical striking, the jury doubtless would still have convicted Lussier. Accordingly, because Lussier has not shown a reasonable probability that the result of the trial would have been different had the instruction been worded differently, he has not shown plain error.

B.

Lussier contends that the district court erred in ruling that it would admit impeachment evidence of his prior conviction for assault resulting in serious bodily injury if Lussier testified, arguing that the ruling violated his Fifth Amendment right to due process and his Sixth Amendment right to a jury trial. By not testifying, Lussier failed to preserve this claim in light of the Supreme Court's holding in Luce v. United States that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." 469 U.S. 38, 43 (1984); see also United States v. Johnson, 767 F.2d 1259, 1270 (8th Cir. 1985) ("Although Luce was decided under Fed.R.Evid. 609(a)(1), its logic applies with equal force to motions under Rule 404.").

C.

Lastly, Lussier contends that the evidence was insufficient to convict him of kidnapping. We review *de novo* a challenge to the sufficiency of the evidence after

denial of a motion for acquittal, viewing the evidence in the light most favorable to the verdict. United States v. Ford, 726 F.3d 1028, 1033 (8th Cir. 2013). We draw all reasonable inferences in the government's favor, and reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Bordeaux, 84 F.3d at 1547-48. Under 18 U.S.C. § 1201(a), a defendant is guilty of a crime if the defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person." Kidnapping under § 1201(a) thus has two elements: that of seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away; and holding for ransom or reward or otherwise. Chatwin v. United States, 326 U.S. 455, 459 (1946). As to the second element, "[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim." Id. at 460.

Lussier argues that the evidence was insufficient because it did not show that he "held" the victims. The district court instructed the jury that Lussier was charged with holding each victim "for the purpose of preventing him or her from contacting law enforcement and preventing the discovery of Defendant's crime." Lussier contends that the evidence does not show he held or had the intention to hold the victims because the trap door to the crawl space was not locked or obstructed, and there is no evidence that Lussier remained at Maxwell's house to prevent the victims from escaping.

We conclude that the evidence was sufficient to convict Lussier of kidnapping. Lussier beat the three victims, causing each of them significant injuries. He then threw them into the crawl space and closed the door, leaving them in a cold, dimly lit space where they would not be readily found. A jury could reasonably infer from these facts that Lussier intended to confine the injured, incapacitated victims and prevent them from reporting the assault notwithstanding his failure to lock or obstruct the trap door or personally stand guard to prevent them from escaping. Cf. United

States v. Stands, 105 F.3d 1565, 1576 (8th Cir. 1997) (holding that evidence was sufficient for kidnapping conviction where Defendant inveigled or decoyed the victim for the purpose of transportation to an isolated location where assault would not be interrupted).

The judgment is affirmed.

_____