# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3167

_____

United States of America

*Plaintiff - Appellee*

v.

Robert J. Gross

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 24, 2021
Filed: January 24, 2022

_____

Before KELLY, ERICKSON, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

In May 2019, a jury convicted Robert Gross of two counts of interstate stalking (Counts 1 and 2), 18 U.S.C. §§ 2261A(1)(B) and 2261(b), and six counts related to his unlawful receipt and possession of firearms. The district court sentenced him to a total of 420 months of imprisonment. Gross appeals, challenging the sufficiency of the evidence on Counts 1 and 2, alleging error in the denial of his motion for new trial, and arguing that his sentence is substantively unreasonable.

I.

Gross was charged in a Superseding Indictment with four counts of interstate stalking (Counts 1–4), alleging that he stalked four different women by traveling from his residence in Missouri to Kansas with the intent to harass and intimidate each of them, causing substantial emotional distress.[1] Counts 1 and 2 arose out of Gross's conduct toward Yuling Liu and Chunqiu Wu,[2] respectively.

At trial, Wu testified that in 2017 she operated three massage parlors in Kansas, and Gross was a regular customer at all three. One of the parlors was called Tea Spa Massage, and this was where Liu worked. On the morning of October 1, 2017, Gross went to Tea Spa Massage. When he arrived, Liu was the only employee there and Gross was the only customer.

Surveillance video from the reception area at Tea Spa Massage that morning showed both Gross and Liu. Gross was naked, walking down the parlor's hallway and out of view, and then going into a room off the reception area. Liu closed the door behind him. Gross came back out, saw Liu was eating, and said he thought the parlor was "open for business" and that he would "come back later." Liu gave him his money back but told him that the parlor was indeed open. Gross then became upset, and began to call Liu a "bitch," tell her she was stupid, and berate her for eating breakfast when he wanted a massage. He asked her personal questions and then called her a liar when she answered. He also threatened to report her to immigration for various violations and have her sent "back to China."

---

[1]Gross was also charged with three counts of possession of a firearm by a convicted felon (Counts 5, 7, and 9), 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and three counts of receiving a firearm while under indictment (Counts 6, 8, and 10), 18 U.S.C. §§ 922(n) and 924(a)(1)(D).

[2]On appeal, the parties refer to Yuling Liu and Chunqiu Wu as "Liu" and "Wu" respectively. We adopt this naming convention for purposes of consistency.

Liu offered to call Wu but Gross said he did not need to speak with Wu on the phone because he would "be down there to talk to her." Liu called Wu anyway and gave the phone to Gross. Gross told Wu that there had been "a problem" in one of her other parlors the night before and that she "owe[d him] some money." Specifically, he said that he paid $60 at the other parlor "for a 15-minute massage that [he] gave [him]self." Gross told Wu that, as the manager, she should have been there to solve the problem "before [he] got mad." He said that he was "super mad now" because the same thing was happening again.

Gross eventually told Wu that he expected Liu to give him a massage, and he handed the phone and his money back to Liu. Liu tried to return the money, but Gross refused and, while naked, grabbed Liu from behind and held her closely. Liu, still on the phone with Wu, broke free, ran outside, and flagged down a passerby. By the time Liu reentered the parlor with the passerby, Gross was dressed. Gross took the phone and told Wu "I am going, but you owe me some money. Remember that." He then left Tea Spa Massage parlor.

At trial, Wu testified that later the same morning, she was driving into the subdivision where she lived when she spotted Gross driving out of her neighborhood. She took photographs of his car and contacted the police. Wu had never seen Gross in her neighborhood before and was "very afraid." On cross-examination, Gross's counsel asked Wu whether employees engaged in sex work at her massage parlors. Wu answered no.

The jury convicted Gross on Counts 1 and 2 for interstate stalking of Liu and Wu but acquitted him on Counts 3 and 4. The jury also convicted him on all firearms counts.

Several months after Gross's trial, Wu was charged with, and later pleaded guilty to, transporting an individual for purposes of prostitution in the United States District Court for the District of Kansas. After her arrest, she admitted that she knew workers in her massage parlors engaged in sex acts with customers. Only after Wu

was charged did the prosecution team in the instant case learn that the FBI had opened an investigation into Wu days before Gross's trial. In fact, the FBI had conducted surveillance of Wu on the same day she testified at the trial. Gross subsequently filed a motion for judgment of acquittal or, alternatively, a new trial on the grounds that the government's case rested on Wu's perjured testimony. The district court denied the motion.

The district court sentenced Gross to a 60-month sentence on both interstate stalking counts and on each count of receipt of a firearm while under indictment, with the sentences to run consecutively for a total of 300 months. The court sentenced Gross to 120 months on each of the three counts charging him with possession of a firearm as a convicted felon, with these sentences to be served concurrently with each other but consecutively to all other sentences. Combined, Gross's total sentence is 420 months of incarceration.

On appeal, Gross challenges the sufficiency of the evidence on Counts 1 and 2, the interstate stalking convictions. Gross also appeals the denial of his post-trial motion and challenges his sentence as substantively unreasonable.

II.

A.

Gross argues that the government failed to produce sufficient evidence to support either of his interstate stalking convictions. We review challenges to the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the verdict." United States v. Lussier, 844 F.3d 1019, 1023 (8th Cir. 2017). We will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

The government must prove three essential elements to establish that a defendant is guilty of interstate stalking under 18 U.S.C. § 2261A(1)(B): (1) the

defendant traveled in interstate commerce; (2) the defendant traveled with the intent to injure or harass a victim; and (3) the defendant caused the intended victim substantial emotional distress in the course of, or as a result of, that travel. See United States v. Wills, 346 F.3d 476, 493–94 (4th Cir. 2003); United States v. Al-Zubaidy, 283 F.3d 804, 808 (6th Cir. 2002).

We begin with Count 2. Gross argues that the government failed to present sufficient evidence that he engaged in interstate travel with the intent to harass Wu. Gross asserts that the starting point for his travel was Tea Spa Massage, located in Lawrence, Kansas, and that his subsequent drive to Wu's neighborhood in Lenexa, Kansas, was purely intrastate. The government did not provide direct evidence of Gross's interstate travel, but a reasonable jury could infer that on October 1, he crossed from his home in Missouri to Tea Spa Massage and Wu's neighborhood, both in Kansas. See United States v. White, 915 F.3d 1195, 1197 (8th Cir. 2019) ("A verdict may be based on circumstantial as well as direct evidence, and the evidence need not exclude every reasonable hypothesis except guilt." (cleaned up)).

As to his intent to engage in harassing conduct, the jury saw the video of Gross at Tea Spa Massage on the morning of October 1. While there, Gross spoke to Wu on the phone about the "problem" he experienced the night before at one of her other massage parlors. He described himself as "super mad" and he blamed Wu. Moreover, Gross initially was not interested in speaking with Wu on the phone when Liu offered to make the call because, he said, he would "be down there to talk to [Wu]." A reasonable jury could conclude that at least one reason Gross left his home in Missouri and drove to Kansas that morning was to confront Wu about the fact that he did not receive the services he paid for the previous evening and that he believed she owed him a refund.

Gross also argues that the government failed to prove that he engaged in a "course of conduct" that caused Wu substantial emotional distress. Gross points out that there was no evidence that he "harassed" or "intimidated" Wu more than once. Even if Gross is right that there was only one instance of harassment involving Wu,

however, the government was not required to prove a "course of conduct" to establish his guilt.

The federal stalking statute defines two separate crimes: one prohibiting stalking via interstate travel under 18 U.S.C. § 2261A(1), and another prohibiting stalking via interstate communications (often called cyberstalking) under 18 U.S.C. § 2261A(2). See United States v. Gonzalez, 905 F.3d 165, 180 (3d Cir. 2018) (listing elements for both crimes). Only cyberstalking includes a "course of conduct" requirement. In contrast, interstate travel stalking requires that a defendant cause emotional distress "in the course of, or as a result of, such travel." 18 U.S.C. § 2261A(1). Thus, for an interstate travel stalking charge, a single interstate trip is sufficient. See United States v. Lee, 790 F.3d 12, 18 (1st Cir. 2015) (affirming stalking conviction over challenges to sufficiency of the evidence where defendant took a single interstate trip); United States v. Walker, 665 F.3d 212, 224–25 (1st Cir. 2011) (holding that the interstate trip can itself be sufficient to convict where the victim suffered emotional distress as a result of that trip).

Gross appears to draw the "course of conduct" requirement from the district court's jury instructions, which asked the jury to find that Gross traveled interstate "to engage in a course of conduct that caused or attempted to cause substantial emotional distress." However, where jury instructions ask the jury to find something not required by the statutory elements of an offense, we review the sufficiency of the evidence based only on the statutory elements of the charged crime. See Musacchio v. United States, 577 U.S. 237, 243 (2016) ("[A] sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction."). A single incident is sufficient, and Gross does not argue that the government failed to establish that he engaged in an incident of harassing conduct that caused Wu substantial emotional distress. Viewing the evidence in the light most favorable to the verdict, the government presented sufficient evidence to support Gross's conviction on Count 2.

Next, we turn to Count 1. Gross argues that the government failed to establish that he traveled across state lines with the intent to harass or intimidate Liu. Gross contends that the evidence at trial showed that he traveled to Tea Spa Massage seeking sexual services, and that he only became upset with Liu after she refused to provide them.

At the start of the Tea Spa Massage surveillance video, Gross was already naked, walking freely through the massage parlor. After about four and a half minutes, he approached Liu, saw she was eating, and said "Why don't you eat, give me the money, I'll come back later. I'll just come back. . . . It's okay." Liu returned his money, and he said "I thought you were open for business, but you're not. You're not open." When Liu disagreed and insisted that the massage parlor was in fact open, Gross became angry. He began to berate Liu and threaten to notify immigration authorities of her whereabouts, expressing his displeasure with the fact that he "came all the way up here to get a massage" and didn't get one.

According to the video, Gross did not show anger or engage in harassing conduct until he and Liu began arguing about whether Tea Spa Massage was open for business. The government suggests that Gross crossed the Missouri-Kansas line with the intent to harass both "Wu and her employees" because he was upset about not receiving the services he paid for the night before at another of Wu's massage parlors. But Count 1 charged Gross with traveling in interstate commerce with the intent to harass *Liu*. The government presented no evidence that when Gross left his home in Missouri that morning, he knew Liu would be working at Tea Spa Massage. The government also presented no evidence that Gross was angry, upset, or frustrated by anything related to Liu, or harbored any ill will toward her, until after he arrived at Tea Spa—which, as no one disputes, was after he arrived in Kansas. Cf. United States v. Conlan, 786 F.3d 380, 387 (5th Cir. 2015) (noting that § 2261A(2), which uses the same language regarding "person" and "that person" as § 2261A(1), requires that the defendant act with intent towards a particular person). Even assuming an intent to harass the targeted victim need not be the only reason for a defendant's interstate travel, it must be at least one of the reasons to support a

conviction under § 2261A. See Al-Zubaidy, 283 F.3d at 809 ("[Section] 2261A requires more than a showing that [the defendant] crossed a state line and then later stalked [the victim]. [The defendant] must have intended to harass or injure [the victim] at the time he crossed the state line."). Without evidence to support a finding that he traveled in interstate commerce with the intent to harass, injure, or intimidate Liu, no reasonable jury could find Gross guilty on Count 1, and his conviction on this count is vacated.[3]

B.

Gross also appeals the district court's denial of his motion for a new trial on the grounds that the government improperly relied on Wu's perjured testimony to obtain a conviction on the interstate stalking counts.[4] We review the district court's decision for abuse of discretion. United States v. Donnell, 596 F.3d 913, 923 (8th Cir. 2010).

"The government may not use or solicit false evidence or allow it to go uncorrected." United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005). To prove a due process violation on the grounds that the government presented false testimony at his trial, Gross must show that: "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007) (quoting Funchess, 422 F.3d at 701).

---

[3]We find no support for the government's position that the charge of interstate stalking in violation of 18 U.S.C. § 2261A is a "continuing offense." In any event, the only evidence presented at trial of harassment or intimidation directed at Liu occurred on October 1.

[4]Gross also sought a judgment of acquittal on this basis. But where the government violates a defendant's constitutional rights by introducing false testimony, the remedy is a new trial, not a judgment of acquittal. See Giglio v. United States, 405 U.S. 150, 153–54 (1972); United States v. Nelson, 970 F.2d 439, 443 (8th Cir. 1992).

-8-

It is undisputed that Wu committed perjury when she denied that her massage parlors offered sexual services. But the government argues that Gross cannot establish a due process violation because it did not "use" Wu's testimony. Rather, it was Gross's counsel who asked Wu on cross-examination whether her massage workers engaged in sex work. And the government did not reference the perjured testimony in its closing argument or object when defense counsel argued to the jury that Wu lied when she said her massage parlors were not a front for prostitution.

The government also asserts that it neither knew nor should have known that Wu's testimony was false. The government concedes it had suspicions that Wu's massage parlors were offering sexual services. But it says the prosecution team, which included an FBI Special Agent, was not aware until after Gross's trial that a separate FBI investigation of Wu was ongoing. The FBI opened its human trafficking investigation into Wu on May 9, 2019, and Gross's trial began on May 13, 2019. As part of the investigation, members of the FBI conducted surveillance of Wu and her massage parlors, including on the day Wu testified at Gross's trial. However, the prosecution team did not learn of this separate investigation until Wu was charged in the District of Kansas in November 2019. The government's position is that because its "suspicions were not fully confirmed until [Wu] admitted her conduct after her arrest," it did not know, nor should it have known, that Wu perjured herself at Gross's trial.

We need not wade into the first two prongs of the Bass test, both of which present novel and challenging circumstances in this case. Even if the government used testimony from Wu that it knew or should have known was false, Gross has failed to demonstrate a reasonable likelihood that the perjured testimony could have affected the verdict on Count 2.[5] Gross asserts that Wu's testimony "carried the government's case" and that her denial that her massage parlors were a front for prostitution allowed the jury to dismiss his claim that he had traveled to Tea Spa

_____

[5]Because we vacate Count 1 for insufficient evidence, we consider this claim only as it relates to Count 2.

Massage for sex. His conduct on the video, he asserts, "takes on a whole new meaning if he travelled there for sexual contact."

But the jury heard evidence from both parties that indicated Wu's massage parlors likely offered sexual services. For example, Gross's counsel elicited testimony from two law enforcement officers that they suspected the parlors were fronts for prostitution. And in the surveillance video, jurors heard Gross tell Wu that he was mad because he did not get what he paid for from one of Wu's "girls," and that he had to give himself a "15-minute massage." Gross's counsel also argued in closing that Wu had lied about sex work at her massage parlors, and the government did not argue otherwise.

Moreover, Wu's testimony wasn't the only evidence of Gross's intent to harass her. On the video, the jury heard Gross tell Wu that he was angry about the "problem" he had the night before at one of her parlors. And whether the "problem" was that he was denied sexual services or that he was denied a traditional massage, a reasonable jury could conclude that Gross engaged in harassing conduct directed at Wu both on the phone and later in her neighborhood.[6]

Because Gross has not shown a reasonable likelihood that Wu's perjured testimony could have affected the verdict on Count 2, we affirm the district court's denial of his motion for a new trial.

C.

Because we vacate Gross's conviction on Count 1, we vacate his sentence and remand for resentencing. See Greenlaw v. United States, 554 U.S. 237, 253 (2008) (holding that in "sentencing package cases," an appellate court "may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors

_____

[6]Again, Gross does not challenge the jury's finding that he engaged in harassing conduct that caused Wu substantial emotional distress.

-10-

in 18 U.S.C. § 3553(a)").  Accordingly, we need not address Gross's challenge to the substantive reasonableness of his sentence.[7]

## III.

Based on the foregoing, we vacate Gross's conviction on Count 1 as well as his sentence, and we remand for resentencing.

_____

---

[7]Following oral argument, we ordered supplemental briefing to address whether Gross could be sentenced for both receipt and possession of the same firearm, in violation of both 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(1).  We review this issue for plain error and find no error that is plain.  See United States v. Ganter, 3 F.4th 1002, 1009 (8th Cir. 2021) (sentence of consecutive terms of incarceration for violations of § 922(n) and § 922(g)(1) based on defendant's possession of a single firearm affirmed with no discussion of multiplicity).  We thank counsel for their supplemental briefs.