# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2827

_____

United States of America

*Plaintiff - Appellee*

v.

Michael David Watley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota

_____

Submitted: June 15, 2022
Filed: August 19, 2022

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury convicted Michael Watley of two counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Before trial, Watley filed multiple motions in limine seeking to prevent the government from introducing certain

evidence. Watley now appeals the district court's[1] denial of two of those motions in limine. Watley also argues there was insufficient evidence to convict him of both offenses and that the district court abused its discretion in imposing a 10-year sentence. We affirm Watley's conviction and sentence.

## I. Background

Watley's convictions were based on his alleged distribution of heroin to two individuals: Wendy Wentz and Payton Garter.[2] Both Wentz and Garter knew Watley as "Kevin" or "Kev." At trial, the government first identified Watley as Kevin through Tessa Fox. Fox testified she purchased oxycodone and heroin from someone named "Kevin," who she identified in the courtroom as Watley. Fox testified she purchased from Watley approximately four times a week and, on occasion, met Watley at the Grand Theatre in Bismarck, North Dakota. The phone number Fox used to communicate with Watley matched the number Wentz and Garter used to communicate with Watley. The government then introduced evidence of specific instances where Watley distributed heroin to Wentz and Garter.

### A. Count One: Distribution to Wentz

On January 12, 2020, Wentz's son called emergency services after he found Wentz laying in her bathtub. Law enforcement arrived first on the scene and found Wentz without a pulse. An officer observed a syringe laying on the edge of the bathtub, prompting him to administer two rounds of Narcan[3] to Wentz. Paramedics then arrived on the scene and ultimately declared Wentz deceased.

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

[2]Payton Garter formerly went by Payton Cadotte.

[3]Narcan, or naloxone (generic name), is a medication used to revive individuals who have overdosed on opioids.

Law enforcement began investigating to determine whether illegal substances contributed to Wentz's death. Law enforcement obtained and executed a warrant to search Wentz's home. During the search they found three small "bindles" of heroin, a small amount of methamphetamine, a baggie of marijuana, Clonazepam pills, and drug paraphernalia in Wentz's bedroom. They also found Wentz's cell phone and later extracted its contents.

At trial, the government introduced texts messages extracted from Wentz's phone. Specifically, the government introduced text messages between Wentz and a contact named "Kevin." As noted earlier, this number matched the number Fox and Garter used to communicate with Watley.

The extracted records showed Wentz and Watley texting on January 8, 2020. During the conversation, Wentz told Watley that she "want[s] to test it." Wentz and Watley then arranged to meet at a cafe located next to a "work out place" at the Gateway Mall. About ten minutes after arranging the location, Wentz texted "here" at 4:46 p.m. The government introduced surveillance video from a Planet Fitness located next to a cafe at the Gateway Mall. The video showed a white car driving through the parking lot at 4:44 p.m. Wentz's son testified Wentz drove a white Pontiac G6 car.

In addition, the government introduced surveillance of Watley checking into Planet Fitness on January 7, 8, 11, and 12, along with corresponding check-in records. Relevant here, the surveillance video shows Watley, a black male, checking into Planet Fitness on January 11, 2020, wearing tan boots, camouflage pants, a dark top, a gray scarf, and a dark stocking cap.

On January 11, 2020, Wentz texted Watley asking if he had "a half g." Watley indicated he did not, but that he would give Wentz a deal on the "point" he had left. Wentz later asked, "how many you have left and what deak[?]" Watley replied "3 for 120." Wentz then asked where Watley wanted to meet. Wentz's phone records indicate a twenty-second phone call followed. Wentz then texted "I'm here."

-3-

The government then introduced GPS location information collected from Wentz's cell phone showing she was at the Grand Theatre in Bismarck from 9:22–9:27 p.m. Surveillance from the Grand Theatre corroborated this, showing a white car arriving at 9:22 p.m.[4] The surveillance video also showed a black male walking from a nearby Motel 6[5] and Simonson's Station Store toward the Grand Theatre and entering the lobby of the theater at 9:22 p.m. The black male was wearing the same outfit as the male seen checking into Planet Fitness earlier that day. Wentz texted Watley "I'm here" at 9:23 p.m. Surveillance then showed the male exit the Grand Theatre and walk toward and enter a white car. The white car then left the theater at 9:27 p.m.

## B. Count Two: Distribution to Garter

On September 25, 2018, Nikiah Mommer called emergency personnel to the apartment of Erica Berger, reporting a potential overdose. Mommer testified at trial that earlier that day, Mommer and Berger obtained heroin from an individual named Payton Garter. According to Mommer, she and Berger drove to Garter's nearby residence, and she retrieved the heroin from Garter. Once Mommer got back inside Berger's car, Mommer handed the heroin over to Berger. The two then drove back to Berger's apartment, where Mommer witnessed Berger bring out her syringe and use the heroin. Mommer testified that she was on the phone when she noticed Berger laying on the floor as though she had "overdosed."

Mommer then called emergency personnel. Police arrived first, and Mommer told the officer Berger had used heroin. Paramedics then arrived and found Berger without a pulse and not breathing. Paramedics administered Narcan twice and on the second try Berger regained her pulse and began breathing on her own. At trial,

---

[4]Wentz's son testified the car in the surveillance video looked like his mother's car.

[5]The general manager of the Motel 6 testified Watley checked into the motel on January 8, 2020, and checked out on January 15, 2020.

one of the paramedics testified Narcan works only in cases where the individual has overdosed on an opioid.

Garter testified at trial that she obtained the heroin she sold to Mommer from "[a] guy named Kev." Garter identified Watley as the individual she knew as Kev. Garter went on to testify she obtained heroin from Watley multiple times, sometimes three or more times a week when Watley "was around." Garter testified she would meet Watley to get drugs at different locations in Bismarck, such as a movie theater near the Simonson's Station Store called the Grand Theatre. Text messages between Garter and Watley showed they communicated about purchasing heroin as recently as January 8, 2020.

A jury ultimately convicted Watley of both distribution counts. At sentencing, the district court granted the government's motions to depart upward based on Wentz's death and Berger's injury. The district court also granted the government's motion to vary upward based on the potency of the heroin Watley allegedly sold and Watley's alleged distribution of additional controlled substances.

## II. Analysis

Before trial, Watley filed numerous motions in limine. Watley appeals the district court's denial of two of those motions. Watley also challenges the sufficiency of the evidence produced at trial and the district court's 10-year sentence imposed on him.

### A. Motions in Limine

Watley first argues the district court erred in denying two of his motions in limine, which requested the government be prohibited from presenting evidence of: (1) Wentz's death and Berger's overdose and (2) the transfer of heroin from Watley to Garter. "We review the district court's evidentiary rulings for abuse of discretion." *United States v. Cavanaugh*, 30 F.4th 1139, 1141 (8th Cir. 2022). We

will reverse "only 'if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion.'" *United States v. Keys*, 918 F.3d 982, 985 (8th Cir. 2019) (quoting *United States v. Never Misses A Shot*, 781 F.3d 1017, 1027 (8th Cir. 2015)).

### i. Berger's Overdose and Wentz's Death

Watley argues the district court erred by admitting evidence of Berger's overdose and Wentz's death as intrinsic evidence. Watley argues the evidence cannot be considered "intrinsic" evidence—that is, "evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred." *United States v. Guzman*, 926 F.3d 991, 999–1000 (8th Cir. 2019) (quotation omitted). Watley argues the evidence cannot provide context for his distribution charge because Wentz's death and Berger's overdose happened after the charged crime was completed. Thus, Watley argues the evidence was irrelevant to prove the crimes charged. In the alternative, Watley argues the evidence of Wentz's death and Berger's overdose should have been excluded because the evidence was unduly prejudicial.

Under Federal Rule of Evidence 402, "[r]elevant evidence is admissible." We have interpreted relevancy to include "evidence 'providing the context in which the crime occurred, i.e. the *res gestae*.'" *United States v. Morrison*, 748 F.3d 811, 812 (8th Cir. 2014) (quoting *United States v. LaDue*, 561 F.3d 855, 857 (8th Cir. 2009)) (defining admissible evidence under Rule 401). Intrinsic evidence "includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime." *Guzman*, 926 F.3d at 1000 (quoting *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014)). The intrinsic evidence "need not be '*necessary* to the jury's understanding of the issues' to be admissible," but must withstand Rule 403's balancing test. *Id.* (quoting *Young*, 753 F.3d at 770); *see* Fed. R. Evid. 403 (stating the court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice").

The district court did not abuse its discretion in admitting evidence of Berger's overdose. Berger's overdose was relevant to prove the substance Watley distributed was heroin. Berger had no pulse and was not breathing on her own when the paramedics arrived on the scene. Once the paramedics successfully administered Narcan, Berger regained her pulse and was able to breath on her own. As the paramedic explained at trial, Narcan reverses only the effects of opioids like heroin. Law enforcement did not find heroin or drug paraphernalia at Berger's apartment. Because of this, the evidence of the paramedics' administering Narcan to Berger was especially probative of Watley's distribution of heroin. *See United States v. Cathey*, 997 F.3d 827, 832–33 (8th Cir. 2021) (recognizing Narcan as being probative of heroin ingestion); *United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021) (same). Moreover, the probative value of Berger's overdose was not outweighed by unfair prejudice. The district court's instructions properly outlined the elements of distribution of heroin—that is, they did not instruct the jury to convict Watley for Berger's injuries—thus mitigating the risk of prejudice. *See United States v. Sandstrom*, 594 F.3d 634, 645 (8th Cir. 2010) (holding proper instructions can "cure" prejudice because "juries are presumed to follow their instructions") (quoting *Zafiro v. United States*, 506 U.S. 534, 540 (1993)). The district court therefore did not abuse its discretion in admitting evidence of Berger's overdose.

Likewise, the district court did not abuse its discretion in admitting evidence of Wentz's death as intrinsic evidence. While Wentz's death may not have been necessary to prove Watley's distribution under Count One, the evidence of her death provided context to the government's case. *See Guzman*, 926 F.3d at 1000. Wentz's death explained her inability to testify at trial. It also explained the context of the drug evidence found in Wentz's home. Law enforcement went to Wentz's home in response to a medical emergency and searched the area only after her death. Further, the evidence was not unduly prejudicial. Most of the evidence Watley sought to keep out—such as autopsy reports, photos of Wentz's body, 911 calls, descriptions of Wentz's body, testimony of Wentz's supposed ingestion of heroin, and Wentz's cause of death—was not presented at trial. And, again, the jury was properly

instructed on the elements of distribution, and the jury instructions made no mention of Wentz's death, thus reducing the risk of prejudice. *See Sandstrom*, 594 F.3d at 645. Accordingly, we hold the district court did not abuse its discretion in admitting evidence of Wentz's death.

### ii. Transfer of Evidence

Watley's other motion in limine requested exclusion of evidence of the heroin transfer between Garter and Berger. Watley argues evidence of Berger ultimately possessing the heroin is irrelevant to his distribution charge because Watley distributed the heroin to *Garter*. We disagree. The transfer of heroin between Garter and Berger was relevant for proving distribution because it confirmed the drug Watley distributed was heroin. Berger overdosed on the drug distributed by Watley, and paramedics revived Berger using Narcan. Narcan reverses only the effects of opioids such as heroin. The evidence of the transfer between Garter and Berger is thus relevant in proving Watley's distribution of heroin. *See* Fed. R. Evid. 401(a).

### B. Sufficiency of the Evidence

Watley next argues the evidence at trial was insufficient to convict him of both counts of distribution. "We review challenges to the sufficiency of the evidence de novo, 'viewing the evidence in the light most favorable to the verdict.'" *United States v. Gross*, 23 F.4th 1048, 1052 (8th Cir. 2022) (quoting *United States v. Lussier*, 844 F.3d 1019, 1023 (8th Cir. 2017)). We will only reverse "if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *Lussier*, 844 F.3d at 1023).

We are not persuaded by Watley's arguments. First, Watley argues the evidence establishing his guilt under Count One was insufficient because it was based on circumstantial evidence. But we regularly uphold distribution convictions based on circumstantial evidence. *See, e.g.*, *United States v. Cowley*, 34 F.4th 636, 639–40 (8th Cir. 2022); *United States v. Thompson*, 881 F.3d 629, 632–33 (8th Cir.

2018).  And here, the circumstantial evidence strongly supported Watley's conviction.  The government provided evidence of Wentz and Watley's communicating via text messages about purchasing heroin and meeting for the distribution.  The government then produced surveillance videos and GPS data evidencing their execution of these plans.  Watley's identity in the surveillance footage was verified by the Planet Fitness log-in records.  The log-in records corresponded with surveillance at the gym showing a man matching Watley's description in a distinct outfit on the day Watley discussed meeting with Wentz.  Then, surveillance from the Grand Theatre show a man in the same outfit.  The surveillance also shows Wentz's car at the Grand Theatre and GPS placed Wentz at the theater as well.  Hours later, law enforcement found heroin in Wentz's home.  Viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found Watley guilty under Count One beyond a reasonable doubt.  We thus affirm Watley's conviction under Count One.

Second, Watley claims there was insufficient evidence to convict him of Count Two because Garter's testimony was unreliable.  Watley argues a reasonable jury would not have credited Garter's testimony since Garter was a heroin addict, failed to accuse Watley when initially questioned about the incident in 2018, identified Watley from a single photograph, and testified in exchange for immunity.  Credibility determinations, however, are best left to the jury.  *United States v. Thompson*, 972 F.2d 201, 203 (8th Cir. 1992).  We grant great deference to a jury's credibility determination and will only disturb such a determination if the complaining party shows the testimony was implausible on its face.  *See United States v. Campbell*, 986 F.3d 782, 805 (8th Cir. 2021).  Watley fails to make that showing here.  Garter's testimony was logical, and portions of her testimony were even corroborated by the text messages between Watley and Garter.  Because Watley fails to show any of Garter's testimony was implausible on its face, we affirm Watley's conviction.

## C. Sentencing

Lastly, Watley argues the district court abused its discretion in imposing a 10-year sentence. Specifically, Watley argues the evidence was insufficient to justify the district court's upward departures and variances. "We review a district court's decision to depart or vary upward for abuse of discretion." *United States v. Todd-Harris*, 19 F.4th 1074, 1077 (8th Cir. 2021). A district court abuses its discretion if it: "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Petersen*, 22 F.4th 805, 807 (8th Cir. 2022) (quoting *United States v. Hewitt*, 999 F.3d 1141, 1149 (8th Cir. 2021)). This court reviews "any factual findings supporting a departure or variance for clear error." *Todd-Harris*, 19 F.4th at 1077.

After reviewing the record, we hold the district court's findings supporting Watley's sentence were not clearly erroneous. First, the district court imposed a seven-level upward departure for Wentz's death under section 5K2.1 of the United States Sentencing Guidelines Manual. *See* U.S.S.G. § 5K2.1 ("If death resulted, the court may increase the sentence above the authorized guideline range."). In doing so, the district court found by a preponderance of the evidence that the heroin Wentz obtained from Watley caused Wentz's death. Watley argues the district court clearly erred in finding Watley's alleged distribution of heroin resulted in Wentz's death because Wentz's autopsy did not "opine that only heroin use was the cause of death[,]" instead indicating she died from a combination of methamphetamine and heroin poisoning.

We disagree. This court has not directly addressed whether § 5K2.1's "death resulted" language requires "but-for" causation, *see United States v. McKinnie*, 21 F.4th 283, 290 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2798 (2022) (contemplating the interpretation of § 5K2.1's "death resulted" language after the Court's decision

in *Burrage v. United States*, 571 U.S. 204 (2014)[6]), but even if it does the district court's finding that heroin "played a central part" in Wentz's death satisfies this requirement. The district court's finding is adequately supported by the record, which shows that Wentz's autopsy states she died of a combined overdose of methamphetamine and heroin. The "combined" aspect of this cause of death suggests the ingestion of both drugs, together, brought about Wentz's death. Thus, but for Wentz's ingestion of the heroin Watley allegedly sold her, Wentz would not have died from a methamphetamine and heroin overdose. For this reason, we cannot say the district court clearly erred in finding Wentz's death was caused by the heroin Watley distributed. The district court thus did not abuse its discretion in imposing a seven-level departure.

Watley also challenges the district court's departure under U.S.S.G. § 5K2.2 based on Berger's serious bodily injury. *See* U.S.S.G. § 5K2.2 ("If significant physical injury resulted, the court may increase the sentence above the authorized guideline range."). Watley claims there was insufficient evidence to establish Berger suffered an overdose and that the alleged overdose was due to the heroin distributed by Watley. We disagree. "Serious bodily injury" includes "injury . . . requiring medical intervention such as . . . hospitalization." U.S.S.G. § 1B1.1, n.1(M). The evidence at trial established that Berger was taken to the hospital after the paramedics administered Narcan to revive her. Evidence also showed a close temporal proximity between Berger obtaining heroin from Garter and Berger's injury, supporting the district court's conclusion the injury was a result of Watley's heroin distribution. *See United States v. Seals*, 915 F.3d 1203, 1204, 1206 (8th Cir. 2019) (holding a tight chain of events, such as the distribution of a drug and ingestion of the drug, strongly suggested the overdose was caused by that drug). Given this evidentiary support, we cannot say the district court's conclusion that Berger

---

[6]In *Burrage*, the Court held the "resulted from" language contained in 18 U.S.C. § 841(b)(1)(C) required a defendant's unlawful distribution of drugs be the "but-for" cause of the victim's death, rather than a mere contributing factor. 27 F.4th at 216–18.

suffered severe bodily injury was clearly erroneous. As a result, the district court did not abuse its discretion in departing upward under U.S.S.G. § 5K2.2.

Watley next argues there was insufficient evidence to impose a four-level variance[7] based upon allegations that Watley distributed additional quantities of controlled substances. Again, we disagree. It is within the district court's discretion to consider evidence of uncharged conduct produced at trial or during sentencing. *See United States v. Ross*, 29 F.4th 1003, 1008–09 (8th Cir. 2022). At trial, the government introduced evidence that Watley distributed heroin on numerous occasions. Garter testified she acquired heroin, as well as other controlled substances, from Watley on multiple occasions. When Garter used Watley as her drug source, she would buy drugs from Watley as frequently as three or more times a week. Cell phone records also showed Garter texting Watley about purchasing heroin as recently as January 2020. Cell phone records also indicated Wentz obtained heroin from Watley on January 10, 2020. Fox testified she purchased heroin or oxycodone pills from Watley about four times a week between December 2017 and May 2018. None of these sales were factored into the base offense level calculation. Given the evidentiary support for these additional distributions, Watley fails to show the district court abused its discretion in imposing a four-level variance.

Finally, Watley argues the district court's findings regarding the potency of the heroin he allegedly distributed was clearly erroneous. While there was no direct evidence of the heroin's potency introduced at trial, there was circumstantial evidence suggesting the heroin was highly potent. The government introduced text messages from Watley bragging about the potency and quality of his heroin. Texts

---

[7]We note the district court's distinction between imposing a departure versus a variance. "A departure occurs within the context of the Guidelines themselves, which prescribe that the sentencing court should depart from the Guidelines range in certain situations . . . ." *United States v. Spotted Elk*, 548 F.3d 641, 669–70 (8th Cir. 2008). A variance, however, "results from a separate analysis of whether 'a non-Guidelines sentence would be more appropriate under the circumstances pursuant to [18 U.S.C.] § 3553(a).'" *Id.* (quoting *United States v. Washington*, 515 F.3d 861, 866 (8th Cir. 2008)).

from Watley's customers, such as Wentz, also suggested they believed the heroin was potent. And two of Watley's customers, Berger and Wentz, overdosed in close temporal proximity to ingesting heroin from Watley. Based on this evidence, we cannot conclude the district court clearly erred in finding the heroin he distributed was particularly potent. We thus hold the district court did not abuse its discretion in varying upward based on the potency of the heroin Watley was distributing. *See United States v. Edmonds*, 920 F.3d 1212, 1215 (8th Cir. 2019) (considering the potency of the drug to support a variance under 18 U.S.C. § 3553(a) for the seriousness of the offense).

## III. Conclusion

For the reasons stated above, we affirm the district court.

_____