# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1552

———————————————

United States of America

*Plaintiff - Appellee*

v.

Skyler F. Sanders

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Nebraska - Omaha

——————————

Submitted: November 18, 2022
Filed: March 29, 2023
[Unpublished]

——————————

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

——————————

PER CURIAM.

After a two-day bench trial, the district court[1] found Skyler Sanders guilty of two offenses: bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2; and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C.

———————————————

[1]The Honorable Joseph F. Batallion, United States District Judge for the District of Nebraska.

§§ 924(c)(1)(A) and 2. The district court sentenced Sanders to consecutive terms of 96 months' and 84 months' imprisonment. On appeal, Sanders contends the evidence was insufficient on each count. We affirm.

The charges arise out of a robbery of a Bank of the West branch in Omaha, Nebraska. We review challenges to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict. United States v. Gross, 23 F.4th 1048, 1052 (8th Cir. 2022) (citation omitted). Co-defendant, Melvin Wilson, pled guilty and agreed to cooperate. Two days before the robbery, Teddi Tyree, who resided in Georgia, traveled to Omaha to visit Sanders. When she arrived at the airport, Tyree rented a white Infiniti Q50 (the "Infiniti"). The car was operated with a key fob, only one of which Tyree received. The day after her arrival, Tyree and Sanders parked the Infiniti at the Pine Tree Apartments where Tyree's father resided. They then returned to Sanders' house in his Hummer. Only Tyree and Sanders knew where the Infiniti was parked. Tyree took the Infiniti key fob with her to Sanders' residence. The next afternoon, Tyree discovered the Infiniti was missing.

A resident of an apartment complex testified that on the morning of the bank robbery (August 16, 2019), he observed a white Infiniti and a Chevy Equinox that did not belong to any of the residents. He saw two black males, one with dreadlocks, who appeared to be exchanging something between the trunks of the vehicles. Wilson had dreadlocks at the time.

At trial, Wilson recounted the details leading up to the robbery, including his purchase of a black cloth and a sewing kit from Walgreens, his observation of Sanders with a green beanie cap with eye holes cut out of it, Sanders' possession of a metallic gray firearm, and the dealer plates and tape used to cover the Infiniti's license plates. Once the Infiniti's plates were covered, Wilson testified that he drove Sanders to the Bank of the West. Sanders directed Wilson to let him out, but before Sanders got out of the car, Sanders pulled his gun and said, "Don't leave me." Sanders was in the bank for about a minute and a half and returned with a black bag containing money. He ordered Wilson to "Go." Wilson then drove the Infiniti back

-2-

to the Equinox. Wilson then removed the dealer tags and they drove away in the Equinox. Sanders got out of the car with the bag of money at a community center located near 24th Street and Woolworth. Despite several text messages from Wilson asking for his share of the money, Sanders kept all the money taken during the robbery.

The government also presented testimony from several bank employees who were present during the robbery: T.J. Andreasen, a part-time teller; Rickey Loftin, the branch manager; and Shnobia Curry, a teller and sometimes romantic partner of Sanders. Andreasen testified that at approximately 10:34 A.M. on August 16, 2019, a person "rushed" into the bank through the front doors, went to Andreasen's teller station, and demanded money. Loftin's recounting of the events was similar and described the robber as a male who was a little taller than him (Loftin testified that he is six foot three inches tall). The tellers recounted how the robber displayed a gun and repeatedly hit it on the counter. Andreasen, Loftin, and Curry collectively testified that the gun appeared to be real and made of metal.

Curry had met Sanders about ten or eleven years prior to the robbery. She positively identified Sanders in the courtroom. She testified that the robber and Sanders were of the same height and build and that it was possible the robber was Sanders. Curry stated that she and Sanders were intermittently romantically involved and she frequently communicated with Sanders through text messages, iPhone messages, or Snapchat. On the morning of August 16, 2019, Curry received Snapchat messages from Sanders asking if the bank was busy and, using a pig emoji, if police were present. Curry responded, "Yes" in an effort to deter Sanders from coming to the bank. Curry recalled the robber brandishing a gun and demanding that she bring him money.

Officer Brad Bornhoft of the Omaha Police Department ("OPD") was the first officer on scene. Loftin reported to him that an armed male wearing a mask, who was approximately six feet four inches tall with a large build, had robbed the bank.

Loftin noted that the suspect got into a newer model white Infiniti and headed eastbound on West Center Road.

Meanwhile, Officer John Vailliant responded to a report of suspicious activity, which appeared to be possibly related to the robbery. Upon arriving, Officer Vailliant observed a white Infiniti parked on the west side of 82nd Avenue. There was no indication that the vehicle had been broken into. Officer Vailliant observed black tape on the back license plate as well as a black cloth mask on the driver's side seat. DNA found on the cloth matched Wilson's DNA.

Federal Bureau of Investigation Special Agent John Hallock testified that he also responded to the Bank of the West robbery and was involved in the subsequent investigation. On October 3, 2019, when Special Agent Hallock attempted to execute search warrants for Sanders' DNA and phone, Sanders fled.

Kyle Drews, a forensic technician with OPD, testified that after the robbery, the white Infiniti was towed to impound where it was photographed and processed for prints and DNA. A black cloth found on the driver's seat tested positive for Wilson's DNA. Testing of a swab taken from the Infiniti's steering wheel found a high likelihood that Sanders was a contributor to the mixture of DNA.

In considering a sufficiency of the evidence challenge, we apply the "no reasonable jury could have found the defendant guilty beyond a reasonable doubt" standard. Gross, 23 F.4th at 1052 (citation omitted); see also United States v. Morris, 791 F.3d 910, 913 (8th Cir. 2015) (citation omitted) (noting the same standard for a jury verdict is applied to convictions following a bench trial). With regard to the first count, 18 U.S.C. § 2113(a) defines bank robbery as taking "by force and violence, or by intimidation[] . . . from the person or presence of another[] . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank." The evidence overwhelmingly supports the district court's conclusion that Sanders committed each of these essential elements, and that the Bank of the West is an FDIC insured bank. Wilson's

testimony alone, which the district court credited, is sufficient to sustain the conviction for bank robbery. Curry's and Andreasen's testimony further corroborated Sanders' involvement.

With respect to the second count, "brandish" is statutorily defined as "display[ing] all or part of the firearm, or otherwise mak[ing] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4). Testimony from the bank's employees is more than adequate to establish that: (1) Sanders displayed a firearm in furtherance of the robbery; (2) they believed the firearm was real; and (3) Sanders used it in a manner to intimidate them.

For the foregoing reasons, we affirm the judgment of the district court. Defense counsel's motion to withdraw as appointed counsel is denied.

_____